**Arnold I. KRAMER,
Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

No. 85–2803.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1986.

Decided April 15, 1986.

Rehearing Denied May 15, 1986.

Julius Lucius Echeles, Chicago, Ill., for petitioner-appellant.

Stephen L. Heinze, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

This is the third opinion of this circuit in three months dealing with Fed.R.Crim.P. 32(c)(3)(D), which provides that when a defendant alleges inaccuracies in his or her presentence report the sentencing judge is required to make written findings as to the allegations, or a written determination that the disputed matters will not be relied upon for sentencing, and must attach those findings or that determination to the presentence report. *See, United States v. Hamm,* 786 F.2d 804 (7th Cir.1986); *United States v. Eschweiler,* 782 F.2d 1385 (7th Cir.1986). As was done in those two cases, we remand for a speedy and full compliance with Rule 32(c)(3)(D).

## I.

In December, 1983 the district court found Arnold Kramer guilty of four counts of willfully failing to file timely income tax returns and one count of filing a false document with the Internal Revenue Service. Kramer was sentenced to four consecutive one-year terms, five years probation, and a ten-thousand dollar fine. The district judge explained the basis of Kramer's sentence in some detail:

Now, let me give the reasons why I am imposing this sentence. I am imposing this sentence because it is clear to me that Mr. Kramer throughout the time involved in this investigation of him by the Internal Revenue Service agents—and I say this from the evidence I heard and I also say it from my observation of Mr. Kramer—Mr. Kramer has always had his way about things throughout his life. The presentence report shows that. Mr. Kramer believed that he could do this with the United States government and get away with it. Exactly how Mr. Kramer has been able to do this, I do not know, because I do not claim to be an expert in tax matters. But the presentence report can be submitted to any tax consultant or specialist. It amounts almost to a bizarre fact that a lawyer can have a gross income in 1976 of $109,360, $132,933.09; in 1977, $353,980.48; and in 1979, $132,008.66. Yet, he is able to stand here and say, without apparent fear of contradiction, that he does not owe any tax, never owed any and thus he is not to be found guilty of the charges made against him in this indictment.

Kramer disputes that he owes $329,000 in taxes (a figure alleged to be owed by the I.R.S.) and no evidence was submitted at trial about any monies owed. Later, in an unpublished order this circuit affirmed Kramer's convictions and held that while Kramer claimed his sentence was disproportionately severe and based on improper considerations, the court would not disturb the sentence without a plain showing of gross abuse. Kramer did not at that time allege a violation of 32(c)(3)(D).

Kramer then attacked the sentence in district court with two separate motions pursuant to 28 U.S.C. § 2255 and Rule 35(a). The habeas petition under 28 U.S.C. § 2255 was dismissed and one week later the Rule 35(a) motion was denied. The dismissal of the Section 2255 petition was based on the district court's perception that Kramer failed to raise the Rule 32(c)(3)(D) issue on direct appeal, while the denial of the Rule 35(a) motion was based on the district court's perception that Kramer's controversy could not be reasonably and properly litigated in the context of the sentencing proceedings.

Both the Section 2255 petition and the Rule 35(a) motion asserted that not only the length of Kramer's sentence but also the length of his *actual* incarceration were based upon an improper consideration of his disputed tax liability. Kramer claims that because his presentence report states that he owes over $320,000 in taxes, he has been placed in Category 5 of the Parole Board Guidelines. Someone placed in Category 5 must serve a sentence of 24 to 36 months of a four-year sentence. But for the presence of the disputed amount in the presentence report, Kramer might be placed in Category 1, which according to the Parole Board Guidelines means that Kramer need serve as little as six months.

At the time of this appeal, the defendant has already served more than one year.

## II.

There is no dispute in this case that Rule 32(c)(3)(D) was not followed. The district court did not make either a written finding that was attached to the presentence report regarding the disputed amount of taxes the defendant owed or hold a hearing to determine how much taxes the defendant actually did owe. As with many changes in rules it takes time for the bench and bar to adjust and to determine with any certainty how the changes are to be administered in practice. Therefore, we quote again the language of *Eschweiler*, that was quoted in *Hamm*, to assist the bar and bench:

> [*United States v. Rone*, 743 F.2d 1169 (7th Cir.1984)] requires that the sentencing judge ask the defendant three questions in order to comply with Rule 32: (1) whether the defendant has had an opportunity to read the report; (2) whether the defendant and defense counsel have discussed it; and (3) whether he or she wishes to challenge any facts in the report. Id. at 1174. This questioning process establishes a record reflecting that the defendant has had a realistic opportunity to read, discuss, and object to the report.
>
> If the defendant disputes a fact in the report, the requirements of subsection (D) are triggered. *Rone*, 743 F.2d at 1175. The sentencing judge is then obligated either to make written findings concerning the disputed matter or a written determination that the disputed matter will not be relied on for sentencing, and then attached it to the presentence report. Id. at 1175. These procedures, when strictly followed, ensure that the defendant's sentence is based on accurate and reliable information and that subsequent recipients of the report are aware of whatever resolutions occurred at sentencing.
>
> ... Thus all a defendant needs to show in order to be resentenced for a violation of Rule 32(c)(3)(D) is that (1) allegations of inaccuracy were before the sentencing court and (2) the court failed to make findings regarding the controverted matters or a determination that the disputed information would not be used in sentencing.

782 F.2d at 1388 [cites omitted].

■ Because "it was *not improbable* that the trial judge was influenced by improper factors in imposing sentence," *Rone*, 743 F.2d at 1174, the district court must follow 32(c)(3)(D). While a hearing into the controverted matters would indeed be difficult in this case, we find that it would be no more inappropriate then in *Rone*, which articulated the rule applied here. While this error on its face necessitates a remand, the government alleges that a series of formal defects make the defendant's claim without merit. We will briefly address each of these alleged defects.

■ First, the prosecution claims that Kramer either failed to raise the issue of 32(c)(3)(D) on direct appeal, or if it was raised, it was decided adversely to Kramer. Our review of Kramer's direct appeal shows that the issue of improper sentencing was raised, but not the specific issue of compliance with Rule 32(c)(3)(D). An issue previously raised on direct appeal cannot be relitigated in a Section 2255 proceeding only if the issue was resolved on the merits, *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963), and the merits of Kramer's specific claim have not been resolved. Moreover, in the context of a new rule that had not been clearly interpreted at the time of the sentencing in this case, we hold that the defendant can bring his Section 2255 claim after direct appeal. Defendant had good cause in this case to raise his Rule 32(c)(3)(D) claim after direct appeal because it was not until he was before the Parole Board that he had an opportunity to learn that the sentencing judge did not attach a written finding to the defendant's presentence report stating that the judge did not rely on the disputed amount of taxes when sentencing the defendant.

Second, the prosecution contends that the district court did not have the power to rule on Kramer's Rule 35(a) motion because while the motion was filed within 120 days from the denial of certiorari, it was not decided within 120 days, nor before August 1, 1985 when the "interim rule" of the amended Rule 35 took effect. *United States v. Kimberlin,* 776 F.2d 1344, 1346 (1985). The interim rule provides that if the defendant files a motion within 120 days after a denial of certiorari, the court may decide the motion "within a reasonable time" after the expiration of 120 days. *Kimberlin,* 776 F.2d at 1346. Kramer's Rule 35(a) motion was filed on July 17, 1985 and that motion explicitedly stated that the 120th day after Kramer's denial of certiorari was July 30, 1985—two days before the interim rule took effect. At a hearing on July 26, 1985 the district court asked the prosecutor when the 120-day limit would elapse. The defendant was not present at this hearing and the defendant's attorney was out of town so his partner, who apparently was not familiar with the date certiorari was denied, attended the hearing. The prosecutor mistakenly informed the court that the 120-day limit had already expired and therefore the district court no longer had jurisdiction.

Immediately after the hearing the prosecutor was told of his mistake and he agreed to give the court a letter that day to correct his statement to the court. However, the prosecutor's letter was postmarked July 30, 1985 and probably received July 31, 1985—one day after the time period had run. It is not improbable that the government's misinformation induced the district court not to rule because it believed it no longer had the power to do so. The court was not told that it did have the power to act until one day after the time limit had run, but one day before the interim rule went into effect. The district court then ruled within a reasonable time. We hold that in the context of these special circumstances the district court retained jurisdiction over the Rule 35(a) motion. This is clearly within the spirit, if not the letter, of our holding in *United States v. Kimberlin,* 776 F.2d at 1346–47.

### III.

For the foregoing reasons we remand for full compliance with 32(c)(3)(D). We point out that because Mr. Kramer's parole status may be affected by the district court's compliance with 32(c)(3)(D), expeditious compliance with our mandate is imperative in order to permit the parole authorities to speedily fulfill their responsibilities. We order that the mandate should be issued immediately.